## QUESTIONS OF COMPLIANCE WITH CONDITIONS OF INSURANCE POLICY.

[Circuit Court of Wood County.]

THE GERMAN INSURANCE COMPANY OF FREEPORT, ILLINOIS, v. CAROLINE KISTNER, ADMINISTRATRIX.

Decided, April 15, 1904.

*Fire Insurance—Failure of Insured to Cause an Appraisement to be Made—Iron Safe Clause—Keeping of an Inventory Made Within Twelve Months—Liberal Construction Should be Given to the Action of the Parties Where no Question of Dishonest Dealing Arises.*

1. Inferences which may be drawn from a later holding of the Ohio Supreme Court do not warrant an inferior court in going contrary to the declaration in the 60th Ohio State, that the provision in a policy of fire insurance for an ascertainment by appraisers of the amount of the loss, and the furnishing of the award to the company by the insured, imposes no obligation upon the insured to furnish such an award, except where an appraisement has been demanded by the company.

2. The requirement of "the iron safe clause" that the insured shall keep a set of books showing a complete record of the business transacted, does not make it necessary that the insured shall keep a scientific set of books, but it is sufficient if he keep such books as made it possible to fairly ascertain the amount of goods on hand at the time of the fire.

3. The fact that the cash book of a country store had not been placed in the safe at 10 o'clock at night, and can not be produced because destroyed by a fire occurring at that hour, does not afford a defense under the iron safe clause, where a lunch counter connected with the store was still in operation at that hour.

HAYNES, J. (orally) ; PARKER, J., and HULL, J., concur.

Error to the Court of Common Pleas of Wood County, Ohio.

The plaintiff in error brings its action in this court to reverse a judgment of the court of common pleas. John Kistner, prior to the 28th day of June, 1901, and for a good many years before, had been carrying on a grocery and dry goods store in the village of Custar, in Wood county, and had been insuring with the German Insurance Company, plaintiff in error, and on

this 28th day of June, 1901, took out another policy of insurance for another year for the sum of one thousand dollars on his said stock of goods. On the 26th of April, 1902, his store and the contents was destroyed by fire, and thereupon efforts were made by Caroline Kistner, his administratrix (he having died in the meantime), to collect the loss upon this policy of insurance. The negotiations resulted in a disagreement of the parties, and a suit brought in the court of common pleas resulted in a verdict and judgment for the administratrix, and the prosecution of a petition in error in this court.

Two principal points are urged before us as grounds for reversing the judgment of the court of common pleas, and they arise upon certain clauses in the insurance policy, one clause of the policy reading:

"In the event of disagreement as to the amount of loss the same shall, as above provided, be ascertained by two competent and disinterested appraisers, the insured and this company each selecting one, and the two so chosen shall first select a competent and disinterested umpire; the appraisers together shall then estimate and appraise the loss, state separately sound value and damage, and failing to agree, shall submit their differences to an umpire, and the award in writing of any two shall determine the amount of such loss;" then it further provides that the loss "shall not become payable until sixty days after the notice, ascertainment, estimate and satisfactory proof of the loss herein required have been received by this company, including an award of appraisers when appraisal has been required."

I should say that there was no appraisement ever made; none being required by either party. The defendant sets up as one of its defenses that the plaintiff below failed to cause an appraisement to be made, and to furnish an award to the company in writing by such appraisers, and it claims that by reason of such failure, no suit can be maintained upon the policy of insurance. The plaintiff below relied upon a decision made by the Supreme Court of this state which is reported in the 60th Ohio St., page 513, the case of *Grand Rapids Ins. Co.* v. *Finn,* and the defendant relies upon the case of *Insurance Co.* v. *Carnahan,* in 63d Ohio St., page 258. The court, following the case

cited by the plaintiff below, in charging the jury that this defense that had been set up by the insurance company and referred to by it in its second defense, said:

"The second defense relates to the making of an estimate by appraisers as to the amount of the loss; as to that question, there is nothing for the jury to consider."

It is claimed by the plaintiff in error that the case in the 63d Ohio State overrules the case in the 60th Ohio State. The suit in the 60th Ohio State was brought upon o policy that contained, as we understand the citation or quotation, substantially the same language as the policy which is sued upon here, and especially that clause which provides that there shall be furnished an award by appraisers when an appraisal has been required. And the Supreme Court in that case in the first syllabus, say:

"The provisions of a policy of fire insurance that in the event of disagreement as to the amount of loss it shall be ascertained by appraisers; that the loss shall not become payable until sixty days after notice and satisfactory proof of the loss have been given, 'including an award by appraisers, when an appraisal shall have been required,' and no action on the policy shall be sustainable, 'until a full compliance by the insured with all the foregoing requirements,' do not make either an ascertainment of the loss by appraisers or a demand by the insured therefor a condition precedent to a right of action on the policy to recover the loss. Such provisions impose no obligation on the insured to furnish an award of appraisers, except when an appraisal has been demanded by the insurer."

The decision discusses the matter at considerable length, and gives the citations and authorities.

In the Carnahan case referred to, suit had been brought upon a large number of policies, and six of them are included in the case reported. Four cases had gone to the Supreme Court before this that were affirmed, and these six were brought up and reversed. There were several points made in the decision, but the third proposition they discuss is the one that refers to clauses of this nature. I have carefully gone into the Carnahan case and I see no statement that there was a clause in the policy like that in the policy in the case at bar including an

award by appraisers, when an appraisal has been required. There were clauses in it, however, that upon a disagreement there should be an appraisement and award, and the same clause was in those policies that is in the policy in the case at bar, substantially that—

"No suit or action upon this policy, for the recovery of any claim, shall be sustainable in any court of law or equity until after full compliance by the insured with all the foregoing requirements, not unless commenced within twelve months next after the fire."

In the fifth syllabus of this case, the court state their views as follows:

"A condition in a policy of insurance against fire, that in case of loss, and a disagreement or difference between the parties as to the amount of the loss, that amount shall be ascertained by arbitration or appraisal, is a proper and valid condition; and where it is also provided that the condition as to arbitration or appraisal must be complied with before a suit can be brought against the insurer, the condition is thereby made a condition precedent, and to entitle the insured to maintain an action to recover under the policy, he must show that he has either performed the condition or has a legal excuse for non-performance thereof."

I will not read from the opinion at any great length, but there are a few lines I will read. The judge delivering the opinion, says:

"The insured can not rest upon the silence of the insurer as to arbitration, when a difference arises as to the amount of the loss. It was therefore incumbent on the insured, not the insurer, to perform this condition as a condition precedent to his right of recovery, whenever a difference should arise, as to the amount of the loss, whether a demand was made by the insurer or not; and, *a fortiori*, when the other party asserted a difference and demanded a compliance with the contract, the insured firm was put to its choice, at its peril, whether to perform or not."

It is suggested by counsel for plaintiff in error, in argument, that this opinion overrules the decision in the case in the 60th

Ohio State. The case in the 60th Ohio State was decided June 20, 1899, and the case in the 63d Ohio State was decided November 13, 1900, a little less than eighteen months after. Judge Williams, who delivered the opinion in the case in the 60th Ohio State, and the other members of the court, were the same in each case, and in the case in the 63d Ohio State Judges Minshall and Williams dissented. The dissenting opinion is not given, but it is entered. Now if there had been any intention by the court in making up the opinion in the 63d Ohio State to overrule the case in the 60th Ohio State, we think they would have so stated, especially as Judge Williams, who delivered the opinion in the 60th Ohio State, was present and dissented. Undoubtedly there was a discussion of that whole question, and a discussion of the 60th Ohio State and its bearing upon the latter case. We think that the difference between the two cases arises perhaps upon this clause: "If the parties require it, or it be required." Judge Williams, in the case in the 60th Ohio State, says either party may require it. In the case in the 63d Ohio State that was omitted, and it would be practically an agreement that in case of disagreement there shall be an appraisement and award, and that appraisement shall be furnished to the insurance company. Now in that case it might well be argued that the matter of disagreement laid the foundation for the obligation to have an appraisal and award, but when you come to the matter as to whether it would be required by either party, then, unless it be required, it might fairly be said to be waived. That perhaps is the distinction between the two cases. Suffice it for us to say, however, that when we find a case from the Supreme Court that covers this case exactly in point, we can not say the case is overruled and refuse to follow it, until the Supreme Court itself says that the propositions as they stand in the policy in that case have been overruled. At any rate, until further advised by the Supreme Court, we shall hold that the case in the 60th Ohio State will be binding in this case, and that the court did not err in holding that it was a question that the jury should not consider.

Now there is another proposition that it seems is set up as a defense, and it is called the "iron safe clause." They seem to have a printed slip that is used when they insure a country store, that is pasted into the body of the policy and becomes a part of the policy, and that says, after stating that there is so much money on the stock of goods in said store, that:

"It is a part of the consideration for which this policy is issued, and the basis upon which the rate of premium is fixed, that assured under this policy covenants and agrees to keep a set of books, showing a complete record of business transacted including all purchases and sales, both for cash, credit and exchange, together with the last detailed inventory of stock which shall have been taken within twelve months prior to the date of the happening of any loss; and further covenants and agrees to keep such books and inventory securely locked in a fire-proof safe at night, and at all times when the store mentioned in the within policy is not actually opened for business, or in some secure place not exposed to a fire which would destroy the house where said business is carried on. And in case of loss, the assured agrees and covenants to produce such books and inventory; and in the event of a failure to produce the same, this policy shall be deemed null and void, and no suit or action at law shall be maintained for any such loss."

It was argued that the insured in this case was required to take an inventory every twelve months, but we don't see anything of that kind required in the policy. The language of the policy is this:

"It is a part of the consideration for which this policy is issued, and the basis upon which the rate of premium is fixed, that assured under this policy hereby covenants and agrees to keep a set of books, showing a complete record of business transacted, including all purchases and sales, both for cash, credit and exchange, together with the last detailed inventory of stock which shall have been taken within twelve months prior to the date of the happening of any loss; and further covenants and agrees to keep such books and inventory of stock securely locked, etc."

He is to take and keep it; keep an inventory which shall have been taken within twelve months prior to the date, or it may have been taken twelve months before. He don't agree to take

an inventory every twelve months. That may have been the understanding of the insurers. Indeed, they argue along that line, for when this fire occurred, it transpired that this inventory had been taken a year and seven days before, and it was objected that they could not use that inventory. We don't think this clause would bar the use of that inventory; we think he had a right to use that inventory and rely upon it.

It appears from the testimony in the case that this fire occurred a little after ten o'clock at night. It seems in that village there is a custom, and they had in this store, a little lunch counter over which they sold such articles as are sold at lunch counters, and they keep open until ten o'clock, or such a matter, it being a railroad town, and it seems that one brother had started home when he heard the alarm of fire and went back. The other brother had remained in the store and was serving at the lunch counter. The fire originated in the second store from them, and there was a great deal of excitement and discussion as to how they should protect the building of the insured. Questions of that kind came up, but the fire progressed and the parties began to get out what things they could, and finally the building and its contents burned. It appears that the parties kept certain books, and that the main body of those books were in the safe; but there was left out a bill book, and a cash book, and those were burned. As I have stated they kept certain books; they did not keep them in the manner and form perhaps that a scientific book-keeper would keep them; they kept an account of the goods sold to their customers; they kept a cash book, and kept the bills of goods that they bought. They also kept a separate book and when they paid any bills they kept track of them in that book; and from all those things they had the data to make up an account. They did not keep what is called a merchandise account, showing all goods received, and showing the amount sold. It is set up in the answer that Kistner did not keep any such books of account as he was required to keep, and that he did not furnish those books. He did not produce the whole of the books for the reasons I have stated. The court charged the jury this:

"The fourth defense relates to the keeping of a set of books showing a complete record of the business transacted, and the entire defense as stated in the answer, I have read to you in stating the issue in the case.   The defendant claims that the plaintiff did not keep a set of books as required by the policy, and that if he had any books or inventory, he failed to keep them in a safe, or other secure place as he was required to do under the contract.   This provision of the policy set up in the fourth defense is legal and binding upon the plaintiff, and if you find from the evidence that the plaintiff failed to subtantially comply with the same, he can not recover.   If you find from the evidence that the plaintiff failed to keep such books as were required, then he can not recover, or if you find that he did keep such books, but that such books or a part of them were destroyed at the time of the fire through the fault of the plaintiff, then he can not recover.   But if you find from the evidence that the plaintiff substantially complied with this part of his contract in the the keeping of the books and inventories, and in the preservation of them, if you also find any part of such books were destroyed at the time of the fire, but without fault of the plaintiff, that fact would not prevent him from recovering in the action."

As I have stated, the insurance company stands upon this clause of the contract, that those books have not all been produced; they claim further under this clause that those books have not been kept.   Now it is not claimed, as we understand, that these parties should keep what might be called a scientific set of books, but they should keep books showing that the amount of goods that they have on hand be fairly and reasonably ascertained, and it seems to us from the course of business, and from the testimony of the parties that the books they kept were sufficient to enable this company in case of loss to have ascertained substantially the amount of goods that the parties had on hand at the time of the fire.   This man, as I have said, had been in business there for years; had been insured by this same company for a long time.   There is no claim made but what he was honest and upright, and no claim but what the parties who practically conducted the business for him, his sons, were the same; and there is no claim that they, in any manner or form attempted to overstate the amount of their loss, or at-

tempt to defraud the insurance company. It is claimed, however, that the two books which were burned, that were important, were lost by reason of the negligence of the brothers, who represented the father, the insured; that the books should have been put in the safe before the time of the fire, and that after the alarm of fire was given, the brothers should have saved those books if they were out of the safe. We think that the charge of the court was substantially right upon this subject. If there had been gross negligence and carelessness on the part of the plaintiff, or those representing him, and the jury so found, then he ought not to recover; but if they acted as ordinary and prudent men would act under such and like circumstances, then, and in that event, they ought not to be visited with the penalty of a forfeiture of the amount of this policy, or visited with the loss of the whole stock of goods.

A fire alarm is not a very pleasant sound to anyone, but when these brothers heard this one, they immediately did what every prudent man would do; they commenced to see about saving the building, and stopping the spread of the fire, and they worked to that end, but when the fire got to their building, they commenced to get out what things they could. Now, perhaps it would have been wiser if they had thought of saving the two books that were afterwards burned, but it did not seem to have occurred to them, nor can we say that they were guilty of gross negligence in that they did not stop to pick up those two books and save them; they were doubtless excited, but they were doing the best they could, and were acting honestly and fairly in their attempts to save the building and the contents, without any intention of defrauding the insurance company, or defrauding anyone.

Some question is made about this eating room, that it was not really open. Let us see about that. I am inclined to think, from all the testimony, that the store was fairly open at that time. They might keep an eating house or a lunch counter and keep it open late in the evening, because that might be the best time for customers. So long as the store was open, and so long as parties wanted to purchase anything, the plaintiff had a right

to sell. There is no doubt that so late in the evening they did not expect many customers, and there might not be so much use for the cash book being out of the safe, but that cash book was there to be used, and we do not think they were guilty of negligence by having it out at that time of the night, and under these circumstances.

We realize that these are important questions, and there seem to have been a great many decisions upon this clause in the policy; these have been cited at length, and we have endeavored to grasp the spirit of them and to get at what is fairly and justly the thing that is right between these parties. We realize that these policies, as a rule, are full of conditions printed in fine print, and people generally don't read them, or know much about them if they do, and we imagine it is very seldom that the insurance companies provide a school of instruction to enlighten the policy holders; that they find out a great deal more about the meaning of a policy after a fire than before, and we think there should be a liberal construction given to the acts of these parties in regard to the keeping and saving of these books and what they did; and, where they have sustained, as they have in this case, a fire loss—honestly and justly, as we believe—they should be recompensed in accordance with the spirit of the policy of insurance or the principles of insurance.

Some minor questions have been raised in this case, but we do not find any errors in the record that are important, and the judgment of the court of common pleas wil be affirmed.

*Van Pelt, Dale & Farneding, J. W. Grabiel* and *James O. Troup,* for plaintiff in error.

*Baldwin & Harrington,* for defendant in error.